THEODORE DOEMKER ET AL., Appellants, v. CITY OF RICHMOND HEIGHTS ET AL.—18 S. W. (2d) 394.

Division One, May 18, 1929.

M. F. O'Brien and J. C. McAtee for appellants.

*Jourdan & English* and *Claud D. Hall* for respondents.

1028

LINDSAY, C.—This is a suit in equity to cancel certain tax bills issued against the respective properties of the plaintiffs for the improvement of Park Avenue, a public street in the city of Richmond Heights, which is a city of the fourth class and situated in St. Louis County. The aggregate amount in dispute is in excess of $7500. The ground alleged in the petition upon which it is asserted the tax bills are invalid, is want of jurisdiction by the city, to pass the ordinance for the making of the improvement, the letting of the contract, the acceptance of the work and assessment of the taxes. The plaintiffs aver that publication of the resolution declaring the work necessary to be done was had in only one issue of the newspaper, and that since the resolution was not published in accordance with the provisions of Section 8510 and Section 8524 Revised Statutes 1919, the subsequent proceedings were invalid. Section 8510 (Laws 1923, p. 265) requires such a resolution to be published "in some newspaper published in the city for seven consecutive insertions in a daily paper or two consecutive insertions in a weekly paper." Section 8524 provides that if there is no newspaper published in such city, the publication shall be "in the next nearest newspaper published in the county in which such city is situated."

The evidence shows that on the 25th day of July, 1923, the council of the city of Richmond Heights adopted a resolution declaring the work of improvement of Park Avenue, necessary to be done. That resolution was published on July 27, 1923, and August 3, 1923, in the Maplewood News-Champion, a weekly newspaper published and printed in the city of Maplewood in St. Louis County. The city of

Maplewood adjoins the city of Richmond Heights. There was no newspaper printed and published in Richmond Heights in the years 1923 and 1924. The council did not proceed immediately after the publication of that resolution to pass an ordinance for the making of the improvement. Certain conditions and incidents intervening between the publication and the passage of the ordinance, will be referred to later.

On February 6, 1924, the council of the city again adopted a resolution declaring the improvement of Park Avenue to be necessary. This resolution set forth the same improvement to be made as did the resolution of July 25, 1923. The resolution adopted February 6, 1924, was published only once, in the Maplewood Weekly News-Champion—its issue of February 22, 1924. Shortly after this publication by a single insertion, the council, on March 19, 1924, passed an ordinance for the making of the improvements, afterward advertised for bids, and later passed an ordinance for contracting with one Emmet Watson for doing the work; and in due course the contract was executed, the improvements were made, the work accepted, and assessments made against the properties of plaintiffs. The preamble to each of these ordinances referred to the resolution, as having been adopted on February 6, 1924, and did not make reference to the resolution adopted on July 25, 1923. It is admitted that the recitals made in the preambles of these ordinances, to the effect that the resolution adopted on February 6, 1924, was published by two consecutive insertions in said newspaper, were untrue. It is upon that ground, that the plaintiffs contend the city was without authority to proceed, as it did, to pass the subsequent ordinances, let the contract for the work, and issue the tax bills. The defendants contend that by the resolution adopted July 25, 1923, and its publication by two consecutive insertions in the Maplewood News-Champion, on July 27 and August 3, 1923, the city became vested with power to proceed, and that this power was not lost by delay or abandoned by adoption of the resolution of February 6, 1924, or by passage of the subsequent ordinances, which in their preambles, referred only to the resolution adopted February 6, 1924. There were no protests filed on the part of the plaintiffs, or any of them at any time, against the making of the improvements. The tax bills were issued to the contractor, Emmet Watson, and were assigned by him to the defendant Joseph H. Luechtefeld, who filed his separate answer, as did also the city. These answers, among other things, pleaded that plaintiffs well knew that the contractor was proceeding to make the improvements pursuant to the ordinance, that the ordinance provided for the issuance of the special tax bills, that the contractor had contracted to receive payment in tax bills; and that plaintiffs, with such knowledge,

allowed the contractor to proceed. The answers also pleaded that plaintiffs' lots had been benefited, and increased in value, by the improvements, to the extent of the amount of the special tax bills, and that plaintiffs had not offered to pay, or tendered into court, the reasonable value of said improvements. Upon these allegations, they predicate a claim of estoppel. No complaint is made as to the character of the work done, and under the record, and the contentions of counsel, the chief question presented for determination is whether, by adoption of the resolution of February 6, 1924, describing the same improvement, in the same words as the first resolution, and the specific reference to the resolution of February 6, 1924, in the ordinance following, these subsequent proceedings and the tax bills issued thereunder, must be held to be related solely to the resolution of February 6, 1924, and invalid because that resolution was only published once; or, whether these subsequent proceedings are to be held valid as authorized by the resolution of July 23, 1923, which was duly published.

Tax bills are prima-facie valid (Sec. 8507, R. S. 1919), and the burden is on the plaintiffs to establish the invalidity of those here attacked. [Collins v. Jaicks Co., 279 Mo. 404; Williams v. Hybskmann, 311 Mo. 332, 344.]

The adoption of the resolution mentioned in Section 8510, and its publication as required by the statute, are jurisdictional steps. They are conditions precedent, which must be complied with to give the board of aldermen power to proceed; and a failure to comply with those requirements is fatal to the validity of subsequent proceedings based thereon. [Webb v. Strobach, 143 Mo. App. 459; Hinerman v. Williams, 205 Mo. App. 364.] If there is compliance with the provisions mentioned and the majority of the resident owners of the property liable to taxation for the improvement do not file their protest within the time prescribed, "then the board of aldermen shall have power to cause such improvements to be made, and to contract therefor, and to levy the tax as herein provided; and the finding of the board that a majority of such owners have not filed protest shall be conclusive and final." [Sec. 8510, R. S. 1919; Laws 1923, p. 264.]

Counsel for plaintiff call attention to the fact that the resolution of July 25, 1923, directed that it be "published for two consecutive insertions as provided by law in the Maplewood News-Champion, a weekly newspaper published and printed in the city of Maplewood, St. Louis County, Missouri," and did not contain any recital that there was no newspaper published in Richmond Heights and that the next nearest newspaper in St. Louis County was the Maplewood News-Champion; but, that

the resolution of February 6, 1924, contained the recital, that no newspaper was published in Richmond Heights, and that the newspaper designated was the next nearest newspaper published in St. Louis County. It was shown as a fact that in the years 1923 and 1924, there was no newspaper published in Richmond Heights, that the city of Maplewood adjoined the city of Richmond Heights, in St. Louis County, and that said newspaper was the one next nearest to Richmond Heights. The publication of the resolution of July 25, 1923, was a compliance with the provisions of the statute; and the fact that the resolution did not recite all the conditions constituting the Maplewood News-Champion the proper newspaper for such publication, was not fatal to the validity of the resolution or its publication. This conclusion is supported by the rulings in Heman Construction Co. v. Lyon, 277 Mo. 628, 634, 635; Webb v. Strobach, 143 Mo. App. 459; Bambrick v. Campbell, 37 Mo. App. 465. Our conclusion further is that the adoption of the resolution of July 25, 1923, and its publication as stated, and the fact that there were no protests filed, vested the board of aldermen with the power to proceed.

The vital question is whether these tax bills are the result of the exercise of the power so derived. Counsel for plaintiff call attention to this difference in the two resolutions, as evidence of an intention on the part of the board to abandon the resolution of July as a basis for further proceedings. They also point to another difference in the resolution as indicative of an intention to abandon the first resolution. The resolution of July contained the provision that the grading and paving of said street should be done at the expense of the property owners, and that the ''grading shall be included in the same contract as the other improvements of said street, and the whole cost shall be levied as a special assessment or tax against the property abutting upon said improvement,'' while the resolution of February 6, 1924, after providing that the grading should be included in the same contract as the other improvements, had the provision that ''the whole cost of said improvement together with the cost of grading, and *including the engineering fees* for said work, shall be levied as a special assessment or tax against the lots abutting on said improvement.'' Stress is laid upon the fact that in the resolution of February 6, 1924, it is stated that the engineering fees are to be included in the cost, and the resolution of July 25, 1923, does not refer to engineering fees. In fact the engineering fees for this street were added to the other cost of the improvement, and included in the assessments made and the tax bills issued. Aside from the two points mentioned, the resolution of July 25, 1923, is identical with the resolution of February 6, 1924.

The proposed work to be done is described in the same terms in each resolution.

The chief purpose of the publication of such a resolution is to describe the work to be done with such certainty as to enable the property owners to understand the nature of the proposed improvement, and to give them opportunity to protest, if they desire to do so. [Gist v. Construction Co., 224 Mo. 369.]

We have heretofore stated the conclusion that the adoption of the resolution of July 25, 1923, and its publication as shown, with the undisputed fact that no protest was filed against the making of the improvement described in that resolution, vested the city council with power to proceed and to cause to be made the improvements described in that resolution. The resolution of February 6, 1924, in no particular changed the character of the contemplated improvement, but was in that respect identical. We have also indicated the two particulars in which the second resolution was more specific than the first—the statement of all the elements constituting the Maplewood News-Champion, the proper newspaper, and the statement of the inclusion of the engineering fees as part of the cost of the work. These two recitals added in the resolution of February 6, 1924, with the very fact of the adoption of that resolution and its publication in one issue of the newspaper, and the further fact that the ordinance requiring the improvement to be made, was not passed until March 19, 1924, and said ordinance in its preambles made reference only to the resolution of February 6, 1924, constitute the basis of the contention that the resolution of July 25, 1923, cannot be considered as vesting authority to do what was done.

The defendant introduced testimony concerning the circumstances existing at and after the time of the publication of the resolution of July 25, 1923, to show there was no abandonment of the proceedings for the improvement contemplated by that resolution. The city had no official city engineer. The resolution of July, 1923, directed the Highway and Public Improvement Committee to prepare and file plans, specifications and estimate of the cost of the making of the improvements set out in the resolution. A firm of engineers was employed to assist this committee. The evidence was that upon the publication of the resolution of July 25, 1923, the city attorney prepared the forms for the estimate of cost, of the advertisement for bids, and of the contemplated contract, and of the ordinances to be passed, and after doing so, went away on a vacation from which he did not return until about the first of September; also, that one of the members of the engineering firm employed, died on August 31, and the other member became ill about the same time, later went away on account of ill health, and did not return until about December 1st.

The evidence was further to the effect that the city authorities had met with difficulty in finding contractors who would agree to bid upon the work to be done, and that in the interval between the publication of the resolution in July, and the passage of the ordinance in March following, the mayor and the engineer interviewed many persons in an effort to get them interested, and to agree to submit bids for doing the work. The evidence abundantly justified the conclusion reached by the trial court that there was no abandonment of the improvement declared necessary by the resolution of July 25, 1923. This, indeed, must be held conclusive, because, the improvement actually made under the ordinance of March 19, 1923, was the improvement described in that resolution. In 44 Corpus Juris, page 295, it is said:

"The intention of the municipal authorities to abandon proceedings for the making of a public improvement may be implied, as well as express, but such an intention will not be inferred unless the facts are not reasonably consonant with any other theory."

Counsel for plaintiffs emphasize not only the fact that the resolution of February 6, 1924, was adopted, but also the fact that in the subsequent proceedings the preambles or recitals preceding the enacting provisions of the ordinances, referred to the resolution of February 6, 1924, which is to be considered as an ineffectual resolution, because not published as required by statute.

The function or effect of the preamble in a statute or an ordinance should be considered. The authorities are in accord on that subject. In 36 Cyc. 1132, it is said:

"In cases of doubt as to the proper construction of the body of a statute, resort must be had to the preamble or recitals, for the purpose of ascertaining the legislative intent. But where the enacting part of the statute is unambiguous, its meaning will not be controlled or affected by anything in the preamble or recitals."

The like rule in reference to ordinances, is stated in McQuillan. Municipal Corporations (2 Ed.), Section 712:

"Unless expressly required by the charter, the ordinance need not contain a recital of the power to enact it. This will be presumed until the contrary is shown."

The same question was considered by this court in Lackland v. Walker, 151 Mo. 210, l. c. 264. 265, where it was held:

" 'The preamble is no part of the act, and cannot enlarge or confer powers, nor control the words or the act, unless they are doubtful or ambiguous.' . . . The preamble may be looked to in some cases to elucidate a statute. . . . The doubt or ambiguity in question must arise or exist in the body of the act, and the preamble cannot be invoked to create the conditions precedent to its consideration in the premises."

Under these authorities we conclude that the power of the council to pass the ordinance for the doing of the work, as authorized by the resolution of July 25, 1923, and its publication, cannot be held to have been destroyed by the recitals in the preamble to the ordinance.

A case in point is Bohle's Administrator v. Stannard, 7 Mo. App. 51. That was an action upon a tax bill issued for macadamizing a street in the city of St. Louis. In that case the ordinance requiring the work to be done, in its preamble, recited that the ordinance was adopted on the prayer of a majority of the property holders. This recital that a majority of the property owners had petitioned for the improvement was not true. It was held that if the power of the council to pass the ordinance depended upon the correctness of that recital, the recital might be important; but it was held to be unimportant, for the reason that, by the same section of the charter, the council had the power to cause the street to be macadamized whenever they might deem it necessary, whether the property holders desired it to be done or not; and therefore, their jurisdiction not depending in any way on the fact stated in the preamble, its truth or falsity was perfectly immaterial. It was said, l. c. 55:

"The obvious meaning of this ordinance is that this work sued for herein should be done. The council confessedly had power, at the time the ordinance was passed. to order it to be done irrespective of any petition. These things being so. the preamble to the act cannot be invoked to control or restrain its obvious meaning. There is no ambiguity at all about the ordinance; and where this is so, there is no necessity of looking to the preamble for any purpose whatever."

In the case at bar, the council had done and caused to be done through the adoption and proper publication of the resolution of July 25, 1923, the things necessary to be done preliminary to the passage of an ordinance for the doing of the work. Since, in fact, the improvement declared necessary by the resolution of July 25, 1923. duly published. was never abandoned by the council, and the council was vested with the authority to proceed by virtue of the adoption and publication of that resolution. and the enacting part of the ordinance was unambiguous, we are not warranted in holding that the ordinance was invalid merely because of recitals in the preamble. which were not true.

The like principle was announced in this court in State ex rel Kansas City v. Smith, 302 Mo. 594. In that case the city had issued bonds for certain improvements. The charter of Kansas City did not require the council in enacting such ordinance to give its reasons for ordering the improvements. or for issuing the bonds to pay therefor. The ordinance as authority for the issuance of the bonds, recited certain amendments to the charter. These amendments were invalid;

but, it was held that the ordinance itself and the bonds in question, were not invalid, because their validity was sustained by other valid provisions of the charter which were in force and effect, and fully authorized the issuance of the bonds in question; and that being true, it was said, at page 605: "It is wholly immaterial that officers assumed to act under another law which was invalid, if in fact the law they did act under was valid."

We reach the conclusion that since the resolution of July 25, 1923, through its proper publication, was authority to the council to proceed, that authority was not lost nor the ordinance rendered invalid because the ordinance made reference to the resolution of February 6, 1924, which last-named resolution never became effective. Under all the circumstances appearing in the record, we are of the opinion that the resolution of July 25, 1923, was operative for the purposes of proceeding to make the improvements, declared necessary by the resolution.

In 44 Corpus Juris, page 229, in reference to proceedings by municipalities for the making of improvements, it is said: "And if municipal authorities proceed under the provisions of an inoperative statute, the proceedings are nevertheless valid if they conform to the requirements of an operative statute."

We think the resolution of July 25, 1923, was operative, and that the rule stated in the authorities previously cited is, in principle, applicable to such resolution, which, in this instance, is a legislative declaration that a specified improvement is necessary to be made. Being duly published and no protest having been filed, it constituted authority for further proceeding.

The pertinent inquiry is whether the subsequent proceedings had are in accordance with the provisions of the resolution of July 25, 1923. Under that phase of the inquiry, there is to be considered the contention of plaintiffs that the resolution of July 25, 1923, did not specifically state that the engineering fees were to be included as part of the cost of the work.

In 44 Corpus Juris, at page 644, sec. 3083, it is said: "It has been very generally held that engineering charges, including plans and specifications, maps, blueprints, surveys, inspecting materials used in making the improvement, and superintending the work of construction, are proper items to be included in assessing the cost of the improvement, on the theory that they are as much a part of the cost thereof as the contract price of doing the work."

In this case the estimate was made by the Committee on Highways and Public Improvements in accordance with the direction of the resolution. But, this committee, while making the estimate of cost in

its official name and capacity, availed itself in doing so of the services of engineers employed for the purpose. The estimate of cost filed by the committee included the engineering fees as a part of the cost. The statute, Section 8506, requires the estimate to be made by the "city engineer or other proper officer," and to be submitted to the board of aldermen; and provides that no contract for the making of the improvements can be made before the making and submission of such estimate. The attack made here by plaintiffs is not upon the ground that the committee could not legally make the estimate, or that it did not officially make an estimate, or that in planning the improvement, and making the estimate, the city could not avail itself of the services of engineers, but the attack is put upon the ground, as already indicated, that the resolution of July 25, 1923, did not specify engineering fees as an item to be included in the cost. The resolution of July 25, 1923, had the provision and stated the purpose that "the whole cost shall be levied as a special assessment, etc." The statute, Section 8508, concerning tax bills to be issued by cities of the fourth class, provides, that "the total cost of paving, macadamizing, curbing, guttering and the necessary excavation and grading for the same, of any street . . . may be paid in three annual payments. . . ." We have reached the conclusion that express mention in the resolution of July 25, 1923, of the inclusion of engineering fees in the cost of the work, was not essential to its validity.

Pflueger v. Kinsey, 320 Mo. 82, 6 S. W. (2d) 604, was a suit by a property owner to enjoin the inclusion of a charge for engineering and inspection as part of a special tax about to be levied against the property of the plaintiff. In that case the plaintiff relied upon a provision of the charter of the city of St. Louis which provided for the payment therefor by special assessments, that is, one-third of the entire cost should be levied against the property abutting on the work or improvement, ratably by lineal feet, and the remainder should be levied ratably, by area, against all parcels of ground within the benefited district. The section just referred to was held to be an enumeration of the particular kind of improvements for which the property could be made liable, and not an enumeration of the particular items of work that might necessarily enter into the making of such improvements. In the instant case the resolution is in the nature of an enumeration of the particular kind and character of improvements declared necessary to be made, and for the cost of which assessments or taxes shall be levied, and that is the primary purpose of the resolution, the charter of a city of fourth class, and Section 8510 of that Article, does not require the resolution to specify the items of cost of the contemplated improvement.

In the Pflueger case another section of the charter was set forth, which provided that upon the completion of a public improvement to be paid for, in whole or in part, by special assessments, the Board of Public Service should cause the *entire cost* and expense thereof to be computed when they assessed such cost and expense as a special tax. Under that provision it was held that the provisions of the charter were broad enough to authorize the inclusion of a charge for engineering and inspection service in the entire cost of the improvement. This court in that case, En Banc, 6 S. W. (2d) l. c. 607, cited with approval 28 Cyc. 1153: ''All expenses necessarily incident to the making of improvements may be included in the assessment; thus, the cost of surveys, and of preliminary proceedings, . . . are proper items to be included.''

Upon the case in hand it was said: ''Obviously, all items of work that necessarily enter into the making of the improvement are also necessarily a part of the *entire* cost of the improvement.''

Citation with approval was also made to cases in other jurisdictions, holding that the expense of engineering and superintending is a part of the indispensable cost of the improvement, and as such properly included in the estimate. Since the statute does not expressly require that the resolution shall contain any estimate of the cost of improvement, or state the items of cost, and in this case the resolution of July 25, 1923, enumerated the kind and character of improvements to be made, and contained the provision that the whole cost of the improvement should be levied against the abutting property, we are of the opinion that the resolution in this respect was not invalid or insufficient.

Counsel for plaintiffs urge that even though the resolution of July 25, 1923, was a valid one, and had been legally published, yet, whatever proceedings had been started and attempted to have been started by that resolution, were abandoned, and cite City of Marshall v. Wisdom, 127 Mo. App. 640. In that case the ordinance authorizing the improvement required it to be completed within ninety days from the time ''the contract therefor binds and takes effect.'' Advertisement for bids was made and a bid was accepted by ordinance. However, the bidder to whom the contract was awarded, and the city, did not execute the contract until the expiration of almost eleven months after the acceptance of the bid. The complaint in that case was directed against the delay in entering the contract pursuant to the award. The contractor and the city caused the delay, and no explanation of the cause of the delay was given. In the instant case it is explained that the delay in passing the ordinance directing the work to be done, was due to the circumstances, and the difficulty of finding persons who would

agree to submit bids. There is in this case no complaint of delay after the passage of the ordinance of March 19, 1924, either as to the proceedings thereafter taken by the city, or the doing of the work by the contractor. Upon this question a distinction is pointed out in the opinion in Heman Construction Co. v. Lyon, 277 Mo. 628. In that case the city advertised for bids several times before receiving the bid which was accepted. It was said, at page 638:

"Whatever delay occurred was, as the facts disclose, on the part of the city, for which the contractor was in nowise responsible. In the discussion of this question in Jaicks v. Middlesex Inv. Co., 201 Mo. 111, where an ordinance authorized an improvement to be made, and gave full authority for the letting of the contract for same, we held that we were unwilling to say that the contractor who, it appeared, had entered into the contract with reasonable promptitude, and had proceeded speedily to do the work in compliance therewith, should be defeated in regard of his claim therefor on account of the delay on the part of the board letting the contract, and which was not occasioned by the contractor. [Frech v. Lewis, 218 Pa. 1. c. 144.] Following this ruling the Kansas City Court of Appeals in Jones v. Paving Co., 174 Mo. App. 1. c. 404, held 'that the failure of an ordinance to fix the time for the completion of the work does not invalidate the ordinance and that "the tax bills issued in the payment of the work are not void because of long delay in letting the contract for the doing of the work, if the contract was in conformity with the ordinance and the work was done and completed in compliance with the contract."' To a like effect is Koch v. Shepherd, 193 S. W. (Mo.) 601."

The distinction between that case and the case of City of Marshall v. Wisdom, and other like cases, was pointed out.

Counsel for plaintiffs also urge that defendants made no effort to have the tax bills declared valid and subsisting liens on the property of plaintiffs, and that the finding of the court is broader than the pleadings. The abstract filed by plaintiffs does not show the complete record, and does not show any finding of facts or request for finding. It appears from the additional abstract filed by respondents that the trial judge filed a memorandum stating the grounds of his decision. In this memorandum the trial judge, after a statement of certain facts and his conclusion therefrom, stated the further conclusion that "the Board of Aldermen never lost jurisdiction to make the improvements for which the special tax bills were issued, and the same will be held to be valid and subsisting liens against the property of plaintiffs." However, the judgment entered recited no other finding than generally a finding of

the issues in favor of defendants; and the judgment was, that the plaintiffs' petition be dismissed at their cost.

On the grounds we have heretofore stated the judgment should be affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.