THE COMMERCE TRUST COMPANY v. H. G. BLAKELY et al., Appellants.

Division One, March 29, 1918.

1. **BENEFIT ASSESSMENT: According to Area: Gross Inequalities.** An assessment in proportion to area which distributes a local tax in grossly unequal proportions, not because of special considerations applicable to the parcels taxed, but in blind obedience to a supposed charter rule, is invalid.

2. ———: ———: ———: **Blocks.** Where the charter requires the costs of grading a street to be charged as a special tax on all lands on both sides of the street in case the land be laid off in lots or blocks, a theory that the land was laid off in lots and blocks as shown by a plat made many years previously when the lands lay outside the limits of a rapidly growing city, made with no idea of conforming the lots and blocks to the size and shape of those usually found in plotted portions of the city, but laid out in large and irregular tracts for suburban rather than urban purposes, is not correct.

3. ———: ———: ———: ———: **Further Division.** If the large tracts on one side of the street, laid out originally by a recorded plat into large lots and blocks for suburban purposes, are not only susceptible of further division, but such sub-division is necessary if they are to develop like other city property in the vicinity, an assessment, made according to blocks and apportioned according to area, which results in a benefit district several times wider on one side of the street to be improved than on the other, is grossly unequal and unjust.

Trust Co. v. Blakely.

Appeal from Jackson Circuit Court.—*Hon. Daniel E. Bird*, Judge.

REVERSED AND REMANDED.

*R. J. Porter* for appellants.

(1) To arrive at a proper construction of any particular provision when its meaning is not clear, all sections of the charter bearing on related subjects, will be consulted and all such provisions construed together, and the results and consequences of any proposed interpretation may properly be considered as a guide to the probable intent of its language. Verden v. St. Louis, 131 Mo. 166; State v. Public Service Comm., 259 Mo. 704; Collier v. Paving Co., 180 Mo. 362. (2) In construing the word "block" as used in said charter it is evident from the context and the meaning of the word itself, that it does not mean the block designated by the person filing the plat, which term so used often embraces several streets, nor does it refer to any body of ground, however large, surrounded by streets, but it means the ordinary city block, included by four streets as located by the system or scheme of streets, alleys and avenues prevailing generally in that portion of the city and which makes the lots available for the ordinary city purposes and in which case the land is presumed to be benefited to the center of the block, if platted, or a distance of 150 feet one-half the distance of the ordinary block if unplatted. The distance from Wyandotte to Main Street constitutes two blocks and must be so construed. Baltimore Avenue which is opened both north and south of this tract and is required to be opened up through it, to make it available for city purposes must be considered as extended for the purpose of assessing for this improvement. 1 Page and Jones's Taxation by Assessment, sec. 628; 28 Cyc. 1124; Bowlus v. Iola, 82 Kan. 774; Springer v. Avondale, 35 Ohio St. 620; Olson v. City of Topeka, 42 Kan. 709; McGrew v. Kansas City, 64 Kan. 61; Dameshel v. Shanks, 30 S. W. 654; Louisville

v. Asphalt Co., 102 S. W. 806; Caldwell v. Rupert, 73 Ky. 179; State v. Natal, 42 La. Ann. 612; Gilsonite Co. v. St. Louis, 231 Mo. 601; Barber Asphalt Co. v. Watt, 51 La. Ann. 1345; Cooper v. Nevin, 90 Ky. 85; Preston v. Roberts, 12 Bush (Ky.), 570; City of Ottawa v. Burney, 10 Kan. 270; Siver & Sons Co. v. Spokane, 77 Wash. 282; Railway v. Tulsa, 145 Pac. 398; Realty Co. v. Schneider, 240 U. S. 55. (3) Under a proper construction of the charter, where land fronting on the street is laid out in lots and blocks, no property back of these lots can be assessed. The charter only authorizes assessments against land on the street in such case and it cannot be extended by construction to other land not on or adjoining the street. Power to tax must be conferred in unambiguous terms before it can be exercised and if there is a reasonable doubt as to the existence of the power it must be resolved in favor of the taxpayer, and assessing a tax bill of $268 on lot 4, which fronts on 31st Street 440 feet from the street graded and 240 feet distant at its nearest point, is clearly without authority under a proper construction of this charter. 4 Dillon on Municipal Corp. (5 Ed.), sec. 1377; Crane v. French, 50 Mo. App. 367; People v. Railroad, 21 Ill. App. 23; Railroad v. Baldwin, 77 Miss. 788; State v. Chillicothe, 237 Mo. 486; Chillicothe v. Henry, 136 Mo. App. 473; Wabash v. Zeigler, 108 Ill. 304; Chambers Appeal, 159 Pa. St. 20; Wilber v. Springfield, 123 Ill. 395; St. Louis v. Realty Co., 259 Mo. 126; Albers v. St. Louis, 188 S. W. 83; 1 Page and Jones on Taxation by Assessment, sec. 627; Ottawa v. Barney, 10 Kan. 270; Collier v. Paving Co., 180 Mo. 383. (4) The only principal on which a special tax on property is justified is that special benefits are conferred or at least presumed to be conferred on the property. 4 Dillon, Municipal Corp. (5 Ed.), sec. 1440; Construction Co. v. Haussler, 201 Mo. 410.

*B. C. Howard* and *Clarence S. Palmer* for respondent.

(1) Words are to be construed in their ordinary sense. Sec. 8057, R. S. 1909. Provisions regarding

special assessments are to be construed with fairness. Gist v. Construction Co., 224 Mo. 379. (2) Under the charter a block is a block. Sec. 3, Art. 8, Charter, p. 315; Estate Co. v. Paving Co., 180 Mo. 375; State ex rel. v. St. Louis, 183 Mo. 236; Paving Co., v. Fleming, 251 Mo. 210; Construction Co. v. Shovel Co., 211 Mo. 524. (3) If the charter includes in the, taxing district land not abutting on the street improved, such land may be assessed if it is near enough to the street so that it may be reasonably benefited. "Fronting on" in the Kansas City charter means abutting. Moberly v. Hogan, 131 Mo. 19; Sec. 3, Art. 8, Charter; Collier Est. v. Paving Co., 180 Mo. 377.

BLAIR, J.—Kansas City caused a part of Wyandotte Street to be graded, and this is an action by the assignee of special tax-bills issued in part payment for the work. A demurrer to the answer was sustained and judgment entered on appellants' refusal to plead further.

Wyandotte Street runs almost north and south between Thirty-first and Thirty-third Streets (running east and west) but not in a direct line. The two blocks graded lie between the two last-named streets. The territory for several hundred feet on each side of Wyandotte Street was laid out in 1873, when still nearly a mile south of the city limits. A plat was then filed, designated "Amended Plat of McGee's Summit." In 1897 this territory and much other was taken into the city. Subsequently, most of that part of McGee's Summit west of Wyandotte Street was replatted as "Amended Plat of Greystone," and a small portion of that part east of Wyandotte and just north of Thirty-third Street was replatted as Ross's Subdivision. The portion of McGee's Summit designated as blocks and lying east of Wyandotte Street were much larger than ordinary city blocks. Block 2 contained over ten acres, and Block 1 over eight acres. These blocks were divided into portions designated as lots, of which the area far exceeded the ordinary city lot, ranging from three-fourths of an acre to more than one and three-fourths acres. Ordinary city blocks are admitted to be

about 330 feet from east to west, and ordinary lots about 25 or 50 by 130 or 140 feet. The lots and blocks as laid out in "Greystone" conform in size, generally, to ordinary city lots and blocks. In "Greystone" Central Street was opened west of Wyandotte and almost parallel to it. It runs north and south. The block or parcel between Central and Wyandotte is about one hundred and sixty-five feet wide at Thirty-third Street, on the south, and runs almost to a point where Central and Wyandotte meet. This is about 150 feet south of Thirty-first Street. On the east side of Wyandotte and just south of Thirty-first Street lies a tract designated as "Block 1" on the plat of McGee's Summit. Its north boundary extends from Wyandotte on the west 901 feet to Main Street on the east. Its south boundary, between the same streets, is 721 feet in length. Its length from north to south is about 440 feet. On the west side of this tract, from north to south, along Wyandotte Street, lie parcels designated as lots 8, 7 and 6. On the east side, on Main Street, from north to south, lie parcels designated as lots 1, 2 and 3. Between the rear line of 8, 7 and 6 and the rear line of 1, 2, 3 lie parcels designated lots 4 and 5. Lot 4 adjoins the rear of lots 8, 7 and 6. These two parcels (4 and 5) occupy the center of Block 1, extend through it from north to south, are 125 feet in width and front on Thirty-first Street on the north and Spring Street on the south. Along the south line of Thirty-first Street the distance of the northwest corner of lot 4 from Wyandotte Street is 368 feet. Its southwest corner is 240 feet from Wyandotte Street. It is 263 feet from Wyandotte Street to the northeast corner of lot 6 and the southeast corner of lot 7. From the same street, the northeast corner of lot 7 and the southeast corner of lot 8 are distant about 315 feet.

Through blocks 1 and 2, from north to south, there is no street between Wyandotte on the west and Main on the east. Approximately half way between Wyandotte and Main, Baltimore is opened from the north to Thirty-first Street and from the south to

Thirty-third Street—the southern boundary of block 2, Baltimore is about to be opened through the blocks mentioned. Ordinances have been introduced for that purpose.

Property was assessed on the west side of Wyandotte half way to Central. The depth of the district on the west side of Wyandotte varies from 93 feet on the south to 54.5 feet on the north. On the east side of Wyandotte the property was assessed as far back as 425 or more feet on the north side of Block 1 and 365 feet on the south side of Block 1. Three and one-third times as much property, by area, was assessed east of Wyandotte Street as was assessed west of it. Nearly two-thirds of the total amount assessed was assessed against property east of Wyandotte.

The city charter provides that the cost of grading "shall be charged as a special tax on all lands on both sides of the street . . . graded, within the following limits, viz.: In case the land fronting on the street . . . graded be laid off in lots or blocks, property so laid off from the line of the street . . . graded back to the center of the block or blocks, shall be so charged, whether fronting on the street . . . or not; nevertheless, the Common Council shall have power by ordinance to prescribe that such lands shall be not charged beyond the alleys in such blocks, if deemed just and equitable, and in case any land fronting on such street . . . graded be not laid off into lots or blocks, then the land not so laid off, and the land in the rear thereof on the line of the street . . . graded, back one hundred and fifty feet, shall be so charged, whether fronting on the street or not; and land liable for such grading shall be charged according to the value thereof, exclusive of improvements thereon, as herein provided."

The cost of grading involved was charged on the theory that the land was laid off in lots and blocks. Appellant contends this theory was incorrect and that the result of the assessment is the violation of his constitutional rights; that his property is taken without

due process of law, and that the assessment is so arbitrary and so grossly unequal and unfair that it is invalid within the rule announced in Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55.

It is contended that part of McGee's Summit lying east of Wyandotte Street is not laid off in lots and blocks within the meaning of the charter.

A usual definition of "block" is that it is a portion of a city surrounded by principal streets. Ordinarily this is correct. It is apparent that the application of this definition might be unjustifiable in a particular case. In Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55, the court held invalid an assessment in proportion to area which distributed "a local tax in grossly unequal proportions, not because of special consideration applicable to the parcels taxed, but in blind obedience to a rule that requires the result." The city charter of St. Louis was involved. It is clear the parcels denominated blocks 1 and 2 are of a character frequently found in rapidly growing cities like Kansas City. It is also clear the plat was made with no idea of conforming lots and blocks to the size and shape of those usually found in the platted portion of Kansas City. These blocks and lots obviously are laid out for suburban rather than urban uses. Their sizes and shapes and distance from the city in 1873 demonstrate this.

To hold these tracts are "lots or blocks" within the sense of the charter is to ignore all these considerations. [Sivyer & Sons Co. v. Spokane, 77 Wash. 282; In re Smith's Estate, 51 Minn. 316.] It is beyond question these tracts are not only susceptible of further division, but that such subdivision is necessary if this territory is to become a harmonious part of the usual scheme of improvement. Further, the extension of Baltimore Street is not merely to be expected. Steps looking to the extension of it through blocks 1 and 2 had been taken when these proceedings were had. Besides the force of all these facts, we are confronted with the insistence that the application, to this property, of the

block rule of apportionment violates the principle of the Gast case. It is true, exact equality in apportioning the burdens of improvements is beyond human wisdom, and no heed will be given complaints against a rule which approximates justice as nearly as reasonably may be. Exceptional cases of hardship in the natural and ordinary application of a principle of apportionment generally fair and just "must be borne as one of the imperfections of human things" (L. & N. R. R. v. Barber Asphalt Co., 197 U. S. 1. c. 434); nor can the fact that lots and blocks differ somewhat in size always render the rule invalid, any more than it would be rendered invalid by an apportionment not exactly commensurate with the proportion of benefit to the tract affected. A liberal view must be taken of inequalities resulting from the application of any rule of apportionment. Exact equality is humanly impossible. Nevertheless, when all this is given its proper weight a rule of apportionment cannot be upheld in a particular case like this if it results in gross inequality and arbitrarily distributes the burden without regard to "special considerations applicable to the parcels taxed." [Gast Realty Co. v. Schneider Granite Co., supra.]

In this case there is no obstacle, natural or artificial, precluding the extension of Baltimore Street, nor is there an occupancy of such character as to warrant an inference that this property will not be developed like other city property in the vicinity. The application of the term "block" to the property in question and the apportionment according to that definition results in a benefit district on the east side of Wyandotte nearly nine times as wide at one point as one part of the district on the west side of Wyandotte. The district on the east averages more than six times the width of that on the west. We are loath to give the term "block" a definition which so clearly brings it, in its application to this case, within the condemnation of the constitutional principle announced in the Gast case.

The demurrer to the answer should have been overruled. The judgment is reversed and the cause remanded. All concur, except *Bond, P. J.,* absent.